IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SHARON R. CONNELLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:16cv01282 (AJT/JFA) |
| ) | |
| MICHAEL J. BLOT, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## **MEMORANDUM OF DECISION AND ORDER**

This breach of contract action arises out of an unpaid promissory note [Plaintiff's Exhibit 2] ("PX 2" or the "Note") in the face amount of $100,000, signed in 2006 by Defendant Michael J. Blot ("Blot") and John R. Lilly ("Lilly"), who is not a party to this litigation, and made payable to Plaintiff Sharon R. Connelly ("Connelly"), Lilly's mother. Under the terms of the Note, only interest was due and payable quarterly until November 20, 2008, when the entire Note became due and payable.

Although Blot does not dispute that $84,740.15 remains unpaid under the Note, he claims that the Note is unenforceable against him because the applicable limitations period has run. Plaintiff acknowledges that the six-year limitations period had expired before she filed her lawsuit when calculated based on the original November 2008 maturity date but claims that the limitations period was effectively extended when, in 2008, Connelly orally extended the maturity date of the note until June 3, 2016 at Lilly's request and with the knowledge and agreement of Blot. Blot claims that he never agreed to any such extension; that Connelly effectively decided not to enforce the Note against him unilaterally, voluntarily, and at her own risk; and that her claim on the Note is therefore barred by the six-year Virginia statute of limitations.

Alternatively, Blot claims that any enforcement of the Note based on the claimed oral modification is barred by (1) the Virginia Statute of Frauds; (2) the parol evidence rule; (3) the three-year limitations period applicable to oral agreements; or (3) the one-year statute of limitations applicable to demand notes. In response, Connelly claims that (1) the parol evidence rule does not apply since the oral modification is not being offered to contradict the original terms of the Note; (2) the Note was never converted into a demand note since there was specified a definite time for repayment of the Note under the modification agreement; (3) the action is timely under either a six-year or three-year limitations period, which began running in June 2016; and (4) in any event, Blot is estopped from asserting any limitations defense.

On June 22, 2017, the Court held a bench trial and took the matter under advisement.[1] Based on the evidence, the Court finds and concludes that Plaintiff and Defendant entered into a valid extension of the Note's maturity date in 2008 and that Plaintiff's claim for the full outstanding amount of the Note did not accrue until June 3, 2016, thereby making the filing of this action timely. The Court therefore finds in favor of Plaintiff and against Defendant and will enter judgment in favor of Connelly and against Blot in the amount of $84,740.15, together with pre-judgment interest as of June 3, 2016. In support of this verdict, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).[2]

---

[1] On January 9, 2017, Defendant filed a Motion for Summary Judgment [Doc. No. 8], which the Court denied after a hearing on February 10, 2017 [Doc. No. 14].

[2] Federal Rule of Civil Procedure 52(a) provides: "In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court."

## I. FINDINGS OF FACT

Based on all of the evidence and the Court's assessment of the credibility of the witnesses and the weight to be given any particular piece of evidence, together with reasonable inferences drawn from that evidence, the Court makes the following findings of fact:

1. Paradise Cuts, LLC ("Paradise"), a business located in Fairfax, Virginia, was formed by Lilly and Blot, both of whom were members of that Virginia limited liability company.

2. On November 20, 2006, Paradise, Blot, and Lilly (collectively, the "Borrowers"), executed and delivered the Note to Plaintiff Connelly in exchange for a loan of $100,000.

3. The original maturity date under the Note was November 20, 2008. Payments on the Note were due in quarterly interest installments of $2,500 each, beginning on February 20, 2007.

4. On August 11, 2006, the Borrowers obtained a separate loan from Virginia Commerce Bank ("VCB") in the amount of $131,000.00, which was secured by Lilly's home. The VCB loan had an original maturity date of February 11, 2007.

5. The proceeds from both the VCB loan and the Note were obtained to fund Paradise.

6. The Borrowers paid Connelly the first installment of $2,500 that came due in February 2007 but did not make any further payments on the Note until October 1, 2014.

7. Paradise was sold in 2007, and following the sale of Paradise, Blot relocated to Georgia. Lilly remained in Virginia and assumed the lead in winding up Paradise's affairs. During this time, Lilly was in regular contact with Blot by telephone.

8. After the sale of Paradise, Lilly negotiated a restructuring of the VCB loan, with a new maturity date of May 11, 2014.

9. In the spring or summer of 2008, as part of his efforts to wind up the affairs of Paradise on behalf of himself and Blot, Lilly asked Connelly to extend the maturity date on the Note and any further payments on the Note until after the VCB loan was fully paid off. Connelly agreed. More specifically, Connelly and Lilly agreed that Connelly would waive any already accrued interest and any additional interest on the Note until the VCB loan was paid off and that once the VCB loan was paid off, interest would again begin to accrue and be paid quarterly, as set forth in the Note, with a new maturity date for the outstanding principal two-years after the date the VCB loan was fully repaid.

10. After making his modification request to Connelly and obtaining her agreement, Lilly spoke with Blot and informed him that Connelly had agreed to modify their obligations under the Note, as described in paragraph nine. In response, Blot said, "That's great." Following Lilly's conversation with Blot, Connelly asked Lilly if he had informed Blot about the modification agreement, and Lilly said that he had.

11. Blot's response to Lilly concerning the modification agreement that had been reached with Connelly objectively conveyed his agreement to and approval of the modification agreement that Lilly had proposed to Connelly and to which Connelly had agreed.

12. Blot knew of, approved, and accepted the modification agreement that had been reached between Connelly and Lilly.

13. The VCB loan was fully paid off by the Borrowers on June 2, 2014.

14. On August 20, 2014,[3] a payment of $2,500 became due on the Note under the modification agreement. Neither Borrower, however, made that payment when due. On

---

[3] Although not precisely three months after the VCB loan was fully paid off, it appears the parties intended to maintain the quarterly payment dates specified in the Note. *See* Note at 1 (referring to "principal and interest being payable QUARTERLY on the 20th day of FEBRUARY, MAY, AUGUST AND NOVEMBER").

4

October 1, 2014, Lilly made a $500 payment on the Note to Connelly. Lilly continued to make partial sporadic payments on the Note on behalf of the Borrowers until June 2016.

15. After the VCB loan was satisfied, Lilly contacted Blot by telephone in or about June 2014 and told him that given that the VCB loan had been paid off, it was time for the two of them to resume payments to Connelly. Blot responded that he had kids in college and was involved in another lawsuit that might force him into bankruptcy and was therefore unable to pay.

16. On or shortly before October 12, 2014, Lilly left a voicemail for Blot in which he informed him that the two Borrowers needed to start paying Connelly back given that the VCB loan had been repaid and that she was willing to take less money or whatever he could pay.

17. On October 12, 2014, Blot sent an email to Lilly in response to Lilly's voicemail. In the e-mail, Blot stated, "I am going to need time. My debt has not decreased with the payoff of the VCB note, in fact it has increased. . . . [T]his will push me into personal bankruptcy if I cannot satisfy the demand order[4] by Dec 1. I will let you know." PX 8.

18. Blot did not challenge or dispute the existence of the modification agreement when pressed for payment in 2014 following the payoff of the VCB loan. Rather, Blot acted in a manner that confirmed his knowledge and acceptance of the modification agreement that had been reached with Connelly.

19. Connelly did not exercise her option to accelerate the Note before maturity, and the outstanding principal under the Note became due and payable in full on June 3, 2016.

20. Lilly made the last payment against the Note in June 2016, following which, the outstanding amount under the Note was $84,740.15.

---

[4] It is not clear from the context of the e-mail to what "demand order" refers.

21. The Borrowers did not pay off the Note when it became due in June 2016. When the Borrowers did not make any interest payment on August 20, 2016, Connelly made a demand for additional payments, and when those payments were not made, she filed this action on October 11, 2016.

22. Connelly was induced to extend the maturity date of the Note by Blot's acceptance of the modification agreement, reasonably relied on that acceptance, acted to her detriment based on that acceptance, and would be prejudiced were that modification agreement not enforced.

## II. CONCLUSIONS OF LAW

1. This Court possesses subject matter jurisdiction because the amount in controversy exceeds the sum of $75,000 and the Plaintiff and Defendant are citizens of different states. 28 U.S.C. § 1332(a).

2. The Court has personal jurisdiction over the parties, and venue is proper in this District.

3. As this Court's jurisdiction is based upon diversity of citizenship, the substantive law of Virginia governs, including Virginia's choice-of-law rules. *See, e.g.*, *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941).

4. Virginia law applies to these proceedings. Under Virginia law, disputes concerning the validity, effect, or interpretation of contracts are resolved according to the laws of the state where the contract was made. *Woodson v. Celina Mut. Ins. Co.*, 177 S.E.2d 610, 613 (Va. 1970). The Note was signed in Virginia and explicitly states that Virginia law will govern any dispute over the terms of the Note. Accordingly, Virginia law applies to any issues pertaining to the validity of the modification agreement and the enforceability of the Note.

## Modification of the Note

5. Plaintiff Connelly has the burden to prove by a preponderance of the evidence that the parties agreed to a modification of the Note in 2008 and what the terms of that modification were.[5]

6. The Virginia Statute of Frauds did not apply to the parties' modification agreement.

   a. Whether any modification to the Note was required to be in writing pursuant to the Virginia Statute of Frauds is determined by whether the parties' original obligation was required to be in writing. *See Lindsay v. McEnearney Assocs., Inc.*, 531 S.E.2d 573, 575-76 (Va. 2000) ("[W]hen . . . a contract is required to be in writing pursuant to Code § 11-2, any modification to that contract must also be in writing and signed by the part to be charged or his agent."); *see also Reid v. Boyle*, 527 S.E.2d 137, 144-45 (Va. 2000) ("A contract in writing, but not required to be so by the statute of frauds, may be dissolved or varied by a new oral contract, which may or may not adopt as part of its terms some or all of the provisions of the original written contract.").

   b. The Virginia Statute of Frauds, Virginia Code § 11-2(9), provides:

   > Unless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought in any of the following cases: . . . Upon any agreement or promise to lend money or extend credit in an aggregate amount of $25,000 or more.

---

[5] Contrary to Defendant's arguments, the clear and convincing evidence standard does not apply to Connelly's burden of proof with respect to the modification agreement because Connelly claims that there was an agreement in fact to modify the maturity date – not that the parties modified the Note through a course of conduct. *See Stanley's Cafeteria, Inc. v. Abramson*, 306 S.E.2d 870, 873 (Va. 1983) (When determining whether "*a course of dealing by contracting parties* . . . evince[s] mutual intent to modify the terms of their contract[,] . . . such intention must be shown by 'clear, unequivocal and convincing evidence'" (emphasis added) (citation omitted)).

c. The Note simply evidences a loan already made; and Virginia Code § 11-2(9) applies only to promises to lend money in the future – not to money already loaned. *See In re Marsh*, No. 07–10738–RGM, 2007 WL 2693196, at *1 (Bankr. E.D. Va. Sept. 12, 2007) ("In this case, the complaint alleges that plaintiff has already loaned the money to defendant, making the statute of frauds inapplicable"); *Net Connection v. GWBEH, LLC*, 67 Va. Cir. 150 (Va. Cir. Ct. 2005) ("As interpreted, the Statute applies only to agreements to lend money, not agreements where money has already been extended"); *NationsBank of Va., N.A. v. Nash*, 41 Va. Cir. 483 (Va. Cir. Ct. 1997) ("[T]he quoted statute [Va. Code § 11-2(9)] applies to executory contracts, not executed ones, that is, it applies to promises to lend money in the future, not to loans already made."). In other words, Virginia Code § 11-2(9) "provides a defense only to lenders who have made an unwritten promise to extend credit of $25,000 or more. Its language does not appear to provide a defense to debtors who have borrowed $25,000 or more under an unwritten agreement." *In re Marsh*, 2007 WL 2693196, at *1.

d. Virginia Code § 11-2(8) also does not apply since the obligations under the Note were capable of being fully performed within a year. *See Silverman v. Bernot*, 239 S.E.2d 118, 121 (Va. 1977).

e. The Virginia Uniform Commercial Code does not require that the parties' modification agreement be in writing. While a writing is, by definition, necessary to constitute a "note," a "promise," an "order," or a "negotiable instrument," *see*

Va. Code §§ 8.3A-103, 104, there is no such requirement for other agreements affecting a note. *See* Va. Code § 8.3A-117.[6]

7. The parties' oral modification agreement is not inadmissible under the parol evidence rule. "The Virginia Supreme Court has been clear that 'parol evidence of *prior or contemporaneous* oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional, written instrument.'" *Centex Constr. v. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 712 (E.D. Va. 2006) (quoting *Amos v. Coffey*, 320 S.E.2d 335, 337 (Va. 1984)). "At the same time, the parol evidence rule 'has no application to subsequent parol agreements between the parties . . . .'" *Id.* (quoting *Piedmont Mt. Airy Guano Co. v. Buchanan*, 131 S.E. 793, 795 (Va. 1926)).

> It is true that a simple contract completely reduced to writing cannot be contradicted, changed or modified by parol evidence of what was said and done by the parties to it at the time it was made. . . . Nevertheless, by the rules of the common law, it is competent for the parties to a simple contract in writing, before any breach of its provisions, either altogether to waive, dissolve, or abandon it, or add to, change, or modify it, or vary or qualify its terms, and thus make a new one. In such case the contract must be proved partly by the written and partly by the subsequent oral contract which has thus been incorporated into and made a part of the original one.

*Piedmont*, 131 S.E. at 795.

8. Connelly does not offer evidence of the oral modification agreement to establish a prior or contemporaneous agreement that modifies the terms of the Note, as agreed to

---

[6] Va. Code § 8.3A-117 provides in full:
  Subject to applicable law regarding exclusion of proof of contemporaneous or previous agreements, the obligation of a party to an instrument to pay the instrument may be modified, supplemented, or nullified by a separate agreement of the obligor and a person entitled to enforce the instrument, if the instrument is issued or the obligation is incurred in reliance on the agreement or as part of the same transaction giving rise to the agreement. To the extent an obligation as modified, supplemented, or nullified by an agreement under this section, the agreement is a defense to the obligation.
An "agreement" is not a defined term. Here, the parties' modification agreement was part of the same loan transaction that gave rise to Blot's obligation to pay.

9

originally by the parties, but rather to establish a subsequent agreement between the parties. That evidence is therefore not inadmissible under the parol evidence rule.

9. Connelly has proven by a preponderance of the evidence that in 2008 Connelly, Lilly, and Blot entered into a modification agreement, whereby the maturity date on the Note was extended to a date two years after the date the VCB loan was paid in full. The modification agreement was therefore a binding modification to the original terms of the Note.

## Statute of Limitations

10. A six-year statute of limitations applies to Connelly's claim under the Note, and that limitations period began running on June 3, 2016, one day after the Note became due and payable in full under the parties' modification agreement. *See* Virginia Code § 8.3A-118(a) ("[A]n action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."); UCC § 3-118, cmt. 2 ("If the Note is payable at a definite time, a six-year limitations period starts at the due date of the note, subject to prior acceleration."); *see also Yeskolski v. Crosby*, 480 S.E.2d 474, 477 (Va. 1997) (The "due date" on a note that has not been accelerated, or the date on which a right of action accrues, is "on the day after maturity."); *Holladay v. Littlepage*, 16 Va. (2 Munf.) 316 (Va. 1811) (holding that a mutual agreement between a debtor and creditor that suit not be filed until debtor's return form Europe barred suit during his absence from the country and, therefore, the running of the statute during his absence); 120 A.L.R. 765 § 1 (1939) ("It is clear that a binding

promise by the holder of an obligation to extend the time for payment, or not to press for payment, tolls the statute of limitations.").

11. The parties' modification of the Note did not convert the Note into a demand note, and the one-year limitations period applicable to demand notes does not apply. Here, the parties' modification of the note did not state that the Note was payable on demand or at Connelly's will, nor did it fail to state "any" time of payment. *See* Va. Code § 8.3A-108(a) ("A promise or order is 'payable on demand' if it (i) states that it is payable on demand or at sight, or otherwise indicates that it is payable at the will of the holder, or (ii) does not state any time of payment."); *see also Harris & Harris v. Tabler*, 348 S.E.2d 241, 243 (Va. 1986) ("Demand instruments include 'those in which no time for payment is stated.'" (citation omitted)). Rather, the parties' agreement specified a date certain on which the Note became payable in full, *viz.*, two years after the VCB loan was paid off. The modification agreement therefore did not create a note that "does not state any time of payment." *See Whitehurst v. Duffy*, 26 S.E.2d 101, 103 (Va. 1943) ("[I]f the obligation to pay a debt or the time of payment is contingent on the performance of some act, the happening of some event, or the lapse of a specified period of time, the debtor is not in default, nor is the creditor entitled to call for performance until the condition is fulfilled, and the statute cannot begin to run until that time."); *cf. Harris & Harris*, 348 S.E.2d at 243 (Va. 1986) (finding a demand note where contract did not state any time of payment); *Guth v. Hamlet Assocs.*, 334 S.E.2d 558, 564 (Va. 1985) (finding a demand note where contract contained a demand clause and did not state any time of payment).

12. This lawsuit is not barred by the applicable Virginia statute of limitations and was therefore timely filed on October 11, 2016.

**Equitable Estoppel**

13. The doctrine of equitable estoppel applies to a statute of limitations defense. *City of Bedford v. James Leffel & Co.*, 558 F.2d 216, 217-18 (4th Cir. 1977) ("Virginia does recognize that the doctrine of equitable estoppel may preclude a defendant from raising expiration of the period of limitations as a defense.").

14. In order to establish an estoppel with respect to a limitations defense, the Plaintiff must have reasonably and in good faith relied on words or conduct that caused her to refrain from filing suit until after the running of the applicable limitations period. *See City of Bedford*, 558 F.2d 216, 218 (4th Cir. 1977) (applying Virginia law and finding that "[i]t is sufficient that the aggrieved party reasonably relied on the words and conduct of the person to be estopped in allowing the limitations period to expire" because "one cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought" (citation omitted)); *Datastaff Tech. Grp., Inc. v. Centex Const. Co.*, 528 F. Supp. 2d 587, 593 (E.D. Va. 2007) ("The doctrine of equitable estoppel is a 'well-established concept invoked by courts to aid a party who, in good faith, has relied, to his detriment, upon the representations of another.'" (quoting *United States ex rel. Humble Oil & Ref. Co. v. Fid. & Cas. Co. of N.Y.*, 402 F.2d 893, 897 (4th Cir. 1968))); *id.* at 593 ("Based on 'the maxim that no man may take advantage of his own wrong,' equitable estoppel bars a statute of limitations defense by a defendant who, 'by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct.'" (citations omitted)); *id.* at 594 ("[A] plaintiff need not demonstrate actual

fraud or deception by a defendant to invoke equitable estoppel. . . . Rather, equitable estoppel may apply where a defendant makes no intentional misrepresentations, but merely takes actions it 'should unmistakably have understood would cause the [plaintiff] to delay filling his charge.'" (citations omitted)).

15. Blot is estopped from raising a statute of limitations defense with respect to Connelly's enforcement of the Note. When Lilly, Blot's business partner, told Blot that he had reached a modification agreement with Connelly with respect to the Note that they had signed both personally and on behalf of Paradise, Blot objectively manifested his acceptance of that agreement and knew or reasonably should have known that Lilly would convey his acceptance to Connelly, who, in reasonable reliance on that acceptance, did not file suit until after the Note went unpaid after the extended maturity date agreed to. Moreover, Blot's conduct after accepting the modification agreement further confirmed that he had, in fact, agreed to the Note's modification when he failed to protest or otherwise challenge that the Note's maturity date had been extended once he was notified of his obligation to pay on the Note. Had Blot in some fashion placed Connelly on notice after June 2014 that he had not agreed to an extension of the maturity date, Connelly could have timely enforced the original terms of the Note within the six-year limitations period. Instead, Blot created and then perpetuated the belief that he had accepted an extension of the maturity date until after the original limitations period had expired. Connelly reasonably relied to her detriment on the modification agreement and Blot's subsequent conduct, and Blot is estopped from raising a limitations defense.

### Blot's Liability

16. Blot is liable under the Note for the outstanding balance of $84,740.15.

17. Blot is also liable for prejudgment interest at the interest rate specified in the Note. *See* Va. Code §§ 8.01-382, 8.3A-112; *see also id.* § 6.2-302. In that regard, the Note became due on June 3, 2016 and interest runs at the Note rate from that date.

### III. CONCLUSION

For the above reasons, Connelly is entitled to recover against Blot on the Note in the amount of $84,740.15 plus prejudgment interest, to be calculated at the Note rate. *See* Va. Code §§ 8.01-382, 8.3A-112. Accordingly, it is hereby

ORDERED that judgment be ENTERED in favor of Plaintiff Sharon R. Connelly and against Defendant Michael J. Blot in the amount of $84,740.15 plus prejudgment interest at the Note rate as of June 3, 2016; and it is further

ORDERED that Plaintiff submit within ten (10) days of the date of this Order her calculation of pre-judgment interest and that Defendant file any opposition within ten (10) days thereafter.

The Clerk is directed to forward a copy of this Memorandum of Decision and Order to all counsel of record and to delay entry of judgment pursuant to Federal Rule of Civil Procedure 58, pending the Court's further Order concerning the total amount of the judgment to be entered.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
August 9, 2017